[Civ. No. 31874.   Second Dist., Div. Two.   Oct. 1, 1968.]

JEFFERSON INCORPORATED, Cross-complainant and Appellant, v. CITY OF TORRANCE, Cross-defendant and Respondent.

F. Rodman Woelfle and William O'Neil Carlisle for Cross-complainant and Appellant.

Ball, Hunt, Hart & Brown and Stephen A. Cirillo for Cross-defendant and Respondent.

HERNDON, J.—Jefferson, Incorporated appeals from the judgment of dismissal entered following the sustaining of a demurrer without leave to amend to its cross-complaint for declaratory relief against respondent City of Torrance. On the record before us we regard the determinative issue presented by this appeal to be the following:

Where one defendant files a cross-complaint against his co-defendant seeking a declaration of his right to indemnity in the event of plaintiff's recovery of damages from him, should a general demurrer to his cross-complaint be sustained despite the existence of an actual controversy, solely because he cannot demonstrate prior to trial of the primary action that plaintiff's recovery will be founded on facts that also would entitle him to a *favorable* declaration of the controversy?

We have concluded that this question must be answered in the negative. Before setting forth the specific factual situation presented by the instant case, it will be helpful to review briefly the basic rules governing the sufficiency of pleadings in actions seeking declaratory relief.

■ ''The rule that a complaint is to be liberally construed is particularly applicable to one for declaratory relief. [Citation.] ■ It is the general rule that in an action for declaratory relief the complaint is sufficient if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the respective parties . . . and requests that the rights and duties be adjuged. If these requirements are met, the court must declare the rights of the parties whether or not the facts alleged establish that the plaintiff is entitled to a favorable declaration. [Citation.]'' (*Strozier* v. *Williams*, 187 Cal.App.2d 528, 531-532 [9 Cal. Rptr. 683].)

''Since plaintiffs set forth facts showing the existence of an actual controversy and have requested that these rights be adjudged by the court in a matter in which the court is competent to grant declaratory relief, they have stated a legally sufficient complaint. Upon presentation of such complaint, a plaintiff is entitled to a declaration of his rights, whether the declaration be favorable or adverse; thus in the instant case the trial court's order sustaining the demurrer and its dismissal of the action cannot be upheld upon the ground that plaintiffs pursued the wrong kind of action. [Citations.]'' (*Zeitlin* v. *Arnebergh*, 59 Cal.2d 901, 907-908 [31 Cal.Rptr. 800, 383 P.2d 152, 10 A.L.R.3d 707].)

■ ''A complaint for declaratory relief need not establish that the plaintiff is entitled to a favorable declaration, and it is therefore improper to sustain a demurrer on that ground. The sufficiency of the complaint to state facts which entitle the plaintiff to a declaration in his favor is not an issue that can be raised by demurrer, but can properly be raised only by answer. Thus, it has been pointed out that it is rare that a demurrer is an appropriate pleading for the defendant to file in an action for declaratory relief, it being more appropriate for the defendant to admit the existence of the controversy, and if the defendant feels that the plaintiff has not alleged the facts giving rise to the controversy fully and accurately, or that the contentions between the parties are not properly stated, he should plead such facts and contentions affirma-

tively as he understands them to be, and seek explicit judicial confirmation of his contentions." (15 Cal.Jur.2d, Declaratory Relief, § 36, pp. 164-165.)

Of course, judgments sustaining general demurrers to declaratory relief actions have been upheld where the trial court, in effect, has exercised its discretionary power to deny a declaration despite the existence of a controversy "where its declaration or determination is not necessary or proper at the time under all the circumstances." (Code Civ. Proc., § 1061.) (Cf. *Moss* v. *Moss*, 20 Cal.2d 640, 643-644 [128 P.2d 526, 141 A.L.R. 1422]; *Silver* v. *City of Los Angeles*, 217 Cal.App.2d 134, 141-142 [31 Cal.Rptr. 545]; *Wilson* v. *Transit Authority*, 199 Cal.App.2d 716, 721 et seq. [19 Cal.Rptr. 59].)

Similarly, where a complaint sets forth a good cause of action for declaratory relief regarding only a disputed question of law, declarations on the merits unfavorable to a plaintiff have been upheld although such determinations were made in the form of a judgment sustaining a demurrer. (*Wilson* v. *Civil Service Com.*, 224 Cal.App.2d 340, 344 [36 Cal.Rptr. 559].)

However, in the instant case it is not contended that the trial court's ruling constituted the exercise of its discretion to decline a determination of the acknowledged controversy existing between the parties. On the contrary, respondents, in effect, contend that the court's ruling constituted a declaration, sub silencio, on the merits unfavorable to appellant. In support of the propriety of this "declaration," respondent argues that appellant has failed to postulate any theory or state of facts upon which the plaintiff in the principal action may recover a judgment against appellant, or appellant and respondent jointly, which would entitle appellant to indemnity from respondent. This may well be true but we do not agree that this human lack of prescience warrants a judgment of dismissal on the pleadings thereby creating the possibility of the very circuity of actions that Code of Civil Procedure section 442 seeks to avoid by permitting the filing of cross-complaints. (*Roylance* v. *Doelger*, 57 Cal.2d 255, 258 et seq. [19 Cal.Rptr. 7, 368 P.2d 535]; *Horn & Barker, Inc.* v. *Macco Corp.*, 228 Cal.App.2d 96, 102 [39 Cal.Rptr. 320]; *Vegetable Oil Products Co.* v. *Superior Court*, 213 Cal.App.2d 252, 256 [28 Cal.Rptr. 555].)

The present posture of the several parties to this action is clear. However, the facts that will ultimately be established

by plaintiffs in the primary action, and which, of course, also will be determinative of the rights and liabilities of appellant and respondent in their subsidiary action upon the cross-complaint, are presently unknown. Plaintiffs' complaint contains only very general allegations of the ultimate facts upon which they premise their right to recovery.

In sum, plaintiffs allege that appellant and respondent "negligently designed, constructed, owned, maintained, operated, supervised and inspected . . . roads, drainage ditches and pipes [at or near the intersection of Crenshaw Boulevard and Pacific Coast Highway in the City of Torrance, California] in such a manner that a quantity of debris was caused to accumulate in such a way that the water flow was obstructed from its usual water course . . . [and on certain dates] overflowed and backed up upon and damaged plaintiffs' property . . ."

Appellant's cross-complaint contains additional facts and alleges, inter alia, that it had built a shopping center at the location in question; that the drainage system had been designed and constructed in accordance with "the demands and specifications of [respondent];" and that it had leased a portion of one of the buildings located in the shopping center to plaintiffs. Appellant alleges that a controversy exists between itself and respondent as to whether or not, in the event that plaintiffs have recovery against it, it is entitled to indemnification from respondent.

As presently phrased in its cross-complaint, the theories upon which appellant asserts its right to indemnification are: (1) that any damages which plaintiffs may be entitled to recover "were primarily caused by the careless and negligent conduct of cross-defendants in demanding that said drainage system design be used and issuing a permit thereon for the construction of the same;" or (2) that any such damages were due to a breach of respondent's "implied warranty" that the "said drainage system would be capable of controlling an influx of water thereto such that said waters would not flow over and upon [the subject property] and cause damages . . ."

Although respondent filed a general demurrer to appellant's cross-complaint, contending that it failed to state facts sufficient to constitute a cause of action, it actually conceded that a controversy did exist between the parties on the issue of appellant's right to indemnification. In essence, its points

and authorities in support of its demurrer merely contended that the controversy should be determined adversely to appellant, i.e., "There is nothing in the original complaint on file herein nor in [appellant's] cross-complaint to suggest that any negligence on the part of [respondent] is imputed to [appellant]. If [appellant] was not negligent as alleged in the complaint, then no liability would be incurred by [appellant] and no indemnity would be necessary. If, however, [appellant] is liable, it is because it is responsible as a joint tort feasor. In either case, no cause of action for indemnity is stated against [respondent]."

In support of these basic contentions respondent argues that insofar as the drainage system is part of the development of appellant's own property, Government Code sections 818.4 and 818.6 preclude the imposition of any liability upon it by reason of the fact it issued a permit therefor.[1] On the other hand, insofar as the appellant may have been an agent of respondent in constructing any part of the drainage system in the public streets in accordance with plans and specifications required by respondent, then there would still be no need or basis for indemnification because (1) in the absence of affirmative negligence on its part, appellant would not be liable for any damages if it merely constructed the public project in accordance with its terms; and (2) if appellant were guilty of affirmative negligence in performing the "construction contract," then it would be a primary and active joint tort feasor, at least, with no right of indemnification.[2]

---

[1]Government Code section 818.4 provides: "A public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order, or similar authorization where the public entity or an employee of the public entity is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked."

Government Code section 818.6 provides: "A public entity is not liable for injury caused by its failure to make an inspection, or by reason of making an inadequate or negligent inspection, of any property, other than its property (as defined in subdivision (c) of Section 830), for the purpose of determining whether the property complies with or violates any enactment or contains or constitutes a hazard to health or safety."

[2]"[W]here a public agency contracts for the doing of construction work according to plans and specifications, theretofore adopted, and the contractor performs the work with proper care and skill and in accordance with the plans and specifications, but the work thus planned and specified results in an injury to adjacent property, the liability, if any there is, for the payment of damages, is upon the public agency under its obligation to compensate the damages resulting from the exercise of its governmental power. [Citations.] This rule, however, has an excep-

We are strongly inclined to agree with these contentions but nevertheless we believe that they should not have resulted in the sustaining of a demurrer at this early and embryonic stage in the proceedings. Rather, respondent should have been required to file its answer acknowledging the existence of the controversy and asserting these contentions in support of a declaration favorable to itself and unfavorable to appellant. If at the conclusion of plaintiffs' primary action liability is imposed upon appellant, or upon appellant and respondent jointly, upon one of these theories a declaration of the rights of the parties finally determining the issue of indemnity may be made.

An effort to decide these issues in the present stage of the proceedings, of necessity, could constitute no more than an advisory opinion concerning abstract propositions that may or may not ever be realized. Furthermore, serious problems would arise if, after appellant's cross-complaint has been dismissed "on the merits," plaintiffs should ultimately recover judgment upon some factual basis not presently considered by either party. For example, under the broad allegations of plaintiffs' complaint in the primary action, it is conceivable that recovery might be allowed against appellant by reason of an imputed liability stemming from its role as plaintiffs' lessor in charge of the entire property although the primary cause of plaintiffs' damages would be respondent's active negligence in failing to properly inspect and maintain that portion of the drainage system within the public streets over which it bears sole responsibility.

The judgment is reversed.

Roth, P. J., and Fleming, J., concurred.

A petition for a rehearing was denied October 29, 1968.

---

tion to the effect that where the contractor departs from the contract, plans or specifications, or goes beyond them, or performs the work planned and specified in an improper, careless or negligent manner, which results in injury to adjacent property, then he is responsible for the tort he has committed. (*Marin Mun. W. Dist.* v. *Peninsula P. Co.*, *supra*, 34 Cal.App.2d 647 [94 P.2d 404].) Under this latter exception the third party has a cause of action against the contractor. He may . . . have a cause of action against the public agency. In such a situation the contractor and the public agency are joint or concurrent tortfeasors; and each . . . is directly liable . . . for the damage suffered." (*Alisal Sanitary Dist.* v. *Kennedy* (1960) 180 Cal.App.2d 69, 82 [4 Cal.Rptr. 379].)